right in printers, any more than in other persons, to do wrong. If a writing is libellous, and is knowingly published, the law presumes it to be malicious, unless it is proved to be published on an innocent or justifiable occasion. No man can protect himself from responsibility for a libel by pleading his ignorance of the real parties who are attacked, if he knows the publication to be libellous. He is bound not to do a wrong to another, whether personally known or unknown to him. Indeed, malice is so far from being disproved, by showing that the printer did not know who were the parties libelled, that it often aggravates the malignity of the case, by showing a wanton and indiscriminate malice, and an indifference to the peace of the innocent. It often takes away the pretence of good motives in the publication, since the party does not know and does not care, whether it be truth or falsehood. A printer of a newspaper is bound to abstain from publications, which he knows to be libellous, with more than ordinary care, for the wide circulation of his paper may often inflict upon the innocent an irreparable injury. It is no apology for him, that he is not the author; he who wantonly publishes a libel is just as guilty, in the eye of the law, as he who writes it. The author may write from private malice; but the injury is done by the publication.

The real questions then for the jury are, in the first place, whether the publication is a libel; and of this it seems to me there can be no doubt, unless we choose to shut our minds against the obvious meaning of the language. If it is a libel, then the next consideration is, whether the wife was the party alluded to, and whether the import of the language is truly set forth in the innuendoes in the declaration. The next inquiry is, whether the publication was made, by the defendant, with a knowledge that it was libellous. If so, the law presumes it to be malicious; for there is no pretence to say, that there was any justification from the occasion of publication, and an act is deemed malicious, not only when it arises from personal spite, but when it is a wanton and intentional injury. Malice is wilfulness. See Duncan v. Thwaites, 3 Barn. & C. 556, 584, 585; Bromage v. Prosser, 4 Barn. & C. 247.

Verdict for plaintiffs, $800.

## Case No. 3,868.

### DEXTER v. SULLIVAN.

[Brunner, Col. Cas. 585;[1] 14 Law Rep. 455.]

Circuit Court, D. Rhode Island. 1851.

PRACTICE—PRODUCTION OF PAPERS IN CAUSE IN STATE COURT.

The federal courts will not grant a subpoena duces tecum for the purpose of bringing up the original papers in a cause in a state court.

During the progress of the cause, Burgess, for defendant, applied for a writ of subpoena duces tecum, to have the original papers in a case in the supreme court of Rhode Island brought into the circuit court.

THE COURT refused the application, on the ground that it would not make a demand on another court, which would not be granted if made to this court, it being a rule of the circuit court not to allow original papers to go out of the clerk's office.

---

DEXTER (TABOR v.). See Case No. 13,723.

---

## Case No. 3,869.

### DEXTER v. UNITED STATES.

[Nowhere reported; opinion not now accessible.]

---

## Case No. 3,870.

### In re DEY.

[3 Ben. 450;[1] 3 N. B. R. 305 (Quarto, 81).]

District Court, S. D. New York. Nov., 1869.

LIENS ON BANKRUPT'S ESTATE—MECHANIC'S LIEN LAW OF NEW JERSEY.

1. A lien, to be recognized by the bankruptcy court, as a valid lien on property which passes from the bankrupt to the assignee in bankruptcy by virtue of the proceedings in bankruptcy, must be a lien at the time of the commencement of those proceedings.

[Cited in Stuart v. Hines, 33 Iowa, 60.]

2. A bankrupt filed his voluntary petition on May 17th, 1869. Among the property which passed to the assignee were buildings and machinery situated in New Jersey, upon which work had been done prior to May 17th, 1869, for which mechanics' liens were claimed on the buildings, under the laws of New Jersey, the earliest claim of such lien, however, being filed on May 29th, 1869. The assignee in bankruptcy filed a petition asking for a determination as to the validity of the claims of lien: Held, that under the mechanic's lien law of New Jersey, the lien did not exist as a lien upon the property at the time of the commencement of the bankruptcy proceedings: that, the assignee must distribute the estate without reference to the mechanics' liens, as such.

[Distinguished in Clifton v. Foster, 103 Mass. 233; Sabin v. Connor, Case No. 12,197. Disapproved in Re Coulter, Id. 3,276.]

[See note at end of case.]

This case came before the court on testimony taken under an order of reference, on a petition presented to the court by the assignee in bankruptcy, asking for a determination [as to the claims of certain mortgagees and] as to the validity of certain alleged liens, claimed as mechanics' liens, under the laws of New Jersey, on certain real estate, buildings and fixed machinery situated on the Hackensack river in New Jersey, owned by the bankrupt, and used by him in his business as a manufacturer there of poudrette. [There seems, on the evidence, to be no ques-

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]